IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JOSEPH NELUMS,

Plaintiff,

v. case no. ____________________

SMILZ CAPITAL INC.,

Defendant.

**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**

TO THE HONORABLE COURT:

1. Plaintiff Joseph Nelums ("Plaintiff") is a real person who may be contacted through his undersigned attorney. **Plaintiff hereby demands trial by jury.**

2. Plaintiff brings this action in accordance with the anti-harrassment provisions of the federal Telephone Consumer Protection Act ("the TCPA"), a federal statute enacted in 1991 in response to widespread outrage about the proliferation of intrusive, nuisance telemarketing. A text message is "a call" within the meaning of the TCPA.

3. The TCPA is intended to protect consumer privacy by prohibiting certain unsolicited and/or autodialed telemarketing calls including texts, and to provide for transparency by requiring that callers identify themselves and who they are calling for during their solicitations.

4. The TCPA and the FTC's Telemarketing Sales Rule ("the TSR") established the National Do-Not-Call Registry ("the Registry"). The Registry allows people to list their telephone numbers and thereby indicate their instructions to NOT receive telephone solicitations. *See* www.donotcall.gov

5. Telemarketers are required by law to subscribe to and comply with the Registry. NMSA § 57-12-22(C); 47 U.S.C. § 227(C)(3)(F-G); 16 C.F.R. Part 310; 47 C.F.R. § 64.1200(c).

6. The TCPA established private rights of action to recover statutory damages for unlawful telephone solicitations.

**Jurisdiction and Venue**

7. Plaintiff and his telephone were in the State of New Mexico at the time of the illegal telemarketing the subject of this Complaint that Defendants and/or their agents harassed him with. Plaintiff resides in Lincoln County. Venue is proper.

8. This Court has subject matter jurisdiction based on a federal question and supplemental jurisdiction over state law claims pursuant to 28 USC §§ 1331 and 1367.

9. Defendant does business within New Mexico because Defendant or its agents regularly, automatically, repeatedly text message the phones of New Mexicans located within New Mexico for the purpose of advertising products and services. Defendant authorized and approved telemarketing to sell products and services throughout the State of New Mexico. By directing telemarketing phone calls into the forum state, Defendant made itself subject to the specific personal jurisdiction of the courts of the forum state.

10. Defendant controls standardized telemarketing that targets consumers nationwide, including the telemarketing the subject of this Complaint. Some of Defendant's telemarketing is

purposefully directed into the State of New Mexico at New Mexico residents, but it is all the same standardized telemarketing that is directed by Defendant into every part of the United States. As a result of Defendant's nationally standardized telemarketing the subject of this Complaint, Plaintiff suffered the concrete harms and injuries from that telemarketing, within the State of New Mexico, for which the TCPA provide remedies.

**Defendant and its Unlawful Telemarketing conspiracy**

11. Smilz Capital Inc. ("Defendant") is a California company that should be served a Summons by service on its officer Zachary Ersoff at 4935 McConnell Ave. #3, Los Angeles, CA 90066 or wherever he may be located. At all times material to this Complaint, acting alone or in concert with others, Defendant formulated, directed, controlled, had the authority to control or substantially participated in the unlawful acts and practices the subject of this Complaint.

12. Defendant approves and controls contracts and agreements for telemarketing on Defendant's behalf and authorizes payments to the persons who make the actual telephone solicitations. Defendant controls and approves standardized telemarketing text messages and sales pitches directed at consumers including that to Plaintiff as described below.

13. Defendant uses agents to actually send text-messages that promote and sell its product "SMILZ CBD Gummies". The text-messages present consumers with web-based internet links consumers can follow to landing pages where they can buy the product. The text-messages and internet links are designed and controlled by Defendant so that, if a consumer purchases, based on where the purchase came from Defendant can identify the agent that gets a commission from Defendant for the sale.

14. For example, Defendant publicly advertises or has advertised for "affiliates" who will help it with its telemarketing, and it promises them: "With your personalized affiliate link, if a referral doesn't buy at first but comes back and purchases within 90 days, you still get paid". Defendant also promises it affiliates: "You get access to our 90-day Cookie Duration Window that tracks anyone who clicks on your personalized affiliate link. If they don't buy at first but buy 30 or 60 days later, you still get paid."

15. The operating systems Defendant uses to "track" sales including but not limited to its Cookie Duration Window disclose to Defendant that its affiliates use text-messages to sell for Defendant.

16. Defendant, at the same time that it controls, directs, supervises and implements telemarketing including that unlawfully directed at Plaintiff and into the State of New Mexico as described below, does not require any of its marketing agents ("affiliates") to subscribe to or comply with the Registry and it consciously avoids knowing whether its affiliates subscribe to or comply with the Registry.

17. Telemarketing to phone numbers listed on the Registry results in consumer complaints. As a means of identifying Defendant so they can make complaints about unlawful telemarketing, some consumers buy Defendant's products marketed with its text-messages. Then when the product shows up these consumers identify Defendant and complain to it about the unlawful telemarketing that prompted them to make the purchase Defendant fulfilled from its warehouse in Los Angeles.

18. Based also on the numbers of consumer complaints to and about its telemarketers, Defendant had an actual awareness or should have had an actual awareness that its agents actually

making or initiating the telephone solicitations, including the text-messages to Plaintiff described below, telephone people who object to the calls, to people who did not consent to them, and to people whose telephone numbers are listed on the Registry.

19. Minimal oversight by Defendant would have confirmed for it that the telemarketing done on Defendant's behalf was done without complying with the Registry, the TCPA or the TSR.

20. Defendant gave and continued to give substantial assistance or support to its affiliates while knowing, consciously avoiding knowing or being recklessly indifferent to the fact that they are engaged in acts or practices that violate the TCPA and the TSR.

**the Illegal Phone Calls to Plaintiff and a class of others Defendants are Responsible For**

21. Plaintiff's telephone is a wireless or cell phone assigned the number 210-710-7926. Plaintiff uses this phone and number for his personal, household and residential purposes.

22. Within the past twelve (12) months Defendant conspired with its affiliates as part of their common enterprise to repeatedly cause text message telephone solicitations to be initiated and directed to Plaintiff's cell phone.

23. The text messages to Plaintiff are part of a mass-marketing scheme by Defendant where the same standardized sales messaging is directed to consumers nationwide using lead-lists of many names and phone numbers. Defendant's agents periodically upload the lead lists into technology that then at pre-planned times blasts the texts out throughout the telephone communications network of the United States, automatedly, to all phone numbers on the list.

24. Defendant and its agents used an automatic telephone dialing system ("auto-dialer") to send their text messages to Plaintiff. The texts presented a standardized pre-scripted message to Plaintiff, not directed to Plaintiff in particular but to everyone who received the texts.

25. Defendant knows its telephone solicitation advertising is targeted to cell-phones because Defendant relies on smart-phone or internet-connected devices for interested consumers to directly access landing pages where they can buy Defendant's products.

26. To identify Defendant and directly connect it to the unlawful text messages, Plaintiff followed the instructions in Defendant's text messages to Plaintiff to view more advertising for Defendant's CBD gummies. Plaintiff then used Defendant's web-page advertisements in the manner Defendant designed and intended the web-page to be used, and purchased the product.

27. Defendant charged and collected $59.95 from Plaintiff, via the ACH technology it built into its advertisements and soon thereafter shipped the gummies to Plaintiff from its warehouse at 4935 McConnell Ave. #3 in Los Angeles.

28. Plaintiff purchased Defendant's product for the sole and only purpose of identifying Defendant and directly connecting it to its unlawful nationwide telemarketing conspiracy.

29. Plaintiff never gave prior express written consent to receive telephone solicitations from Defendant or its agents.

30. Prior to his purchase of Defendant's CBD gummies Plaintiff never had any prior relationship with Defendant.

31. Defendant's telephone solicitations complained of herein aggravated and harrassed Plaintiff, wasted his time, invaded his privacy, disrupted his days, cost him money for electricity to re-charge his phone, and cost him $59.95 and this litigation to identify Defendant.

32. Defendant does not subscribe to or comply with the Registry.

33. Defendant has not adopted or implemented reasonable policies or practices to comply with the TSR or the TCPA.

34. Defendant does not train or supervise its agents for telemarketing compliance.

35. Defendant's conduct set forth herein and directed at Plaintiff in New Mexico along with a nationwide class of other telephone consumers was deliberate and volitional.

36. Plaintiff's cell phone number referred to above that Defendant or its agents repeatedly text-solicited, has at all relevant times been continuously listed on the National Do-Not-Call Registry.

37. For well over 25 years now the FCC has made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995). *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574 (2013). *Mohon v. Agentra LLC*, 400 F.Supp.3d 1189, 1226 (D. NM 2019). The FCC has rejected a narrow view of liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*.

38. The FCC has instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to ***unsupervised third parties*** would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were ***judgment proof, unidentifiable, or located outside the United States, as is often the case***. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

39. Defendant is either directly liable for the telephone solicitations at issue because it made or initiated them, or Defendant is vicariously liable because Defendant:

a) authorized the texts or caused them to be made;

b) directly or indirectly controlled the persons who actually made or initiated the texts;

c) allowed the telemarketers access to information and operating systems within Defendant's control for the purpose of selling goods and services, without which they would not be able to sell using robocalling;

d) allowed the telemarketers to enter or provide consumer information into Defendant's sales or operational systems;

e) approved, wrote, reviewed or participated in developing the telemarketing sales scripts and messages;

f) Defendant reasonably should have known or consciously avoided knowing that the actual texters and telemarketers were violating the law and Defendant failed to take effective steps within its power to require compliance; OR

g) Defendant gave substantial assistance or support to its agents while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact that its agents were engaged in acts or practices that violated the TCPA and/or the TSR.

40. Defendant ratified the unlawful calls to Plaintiff described above because Defendant accepted and intended the benefits to itself of the telemarketing while knowing or consciously avoiding knowing the calling was unlawful.

FIRST SET OF CLAIMS FOR RELIEF - Violations of the TCPA's Subsection B

41. The foregoing acts and omissions of Defendant or its agents constitute multiple violations of 47 U.S.C. § 227(b) and its implementing regulations: use of an auto-dialer to make telephone solicitations to cell phones.

42. Plaintiff is entitled to and should be awarded against Defendant $500 in damages for each and every violation of the TCPA's Subsection B. Because Defendant's conduct set forth above was knowing and/or willful Plaintiff should be awarded treble damages $1,500 for each and every violation.

SECOND SET OF CLAIMS FOR RELIEF - Violations of the TCPA's Subsection C

43. Defendant or its' agents on Defendant's behalf made telephone solicitations to Plaintiff more than once within 12 months despite the fact his phone number Defendant or its agents called has been continuously listed on the Registry at all relevant times.

44. For each of Defendant's calls to Plaintiff the subject of this Complaint, Plaintiff should recover up to an additional $1500 pursuant to 47 U.S.C. § 227(C).

THIRD SET OF CLAIMS FOR RELIEF

45. Plaintiff is likely to be damaged by Defendant's telemarketing in the future. Therefore in accordance with Section 57-12-10A of the New Mexico Unfair Practices Act ("the UPA") Plaintiff hereby requests Judgment for the following injunctive relief:

- Order that Defendant shall either personally subscribe to and comply with the National Do Not Call Registry at all times, or Defendant shall require proof and confirmation from its telemarketing agents that they themselves actually subscribe to and comply with the National Do Not Call Registry at all times;

- Order that Defendant shall train and actually supervise its agents for telemarketing compliance.

Request for Class Certification

46. Telemarketing campaigns generally place calls or texts to hundreds or thousands of potential customers *en masse*. Telemarketing cases are uniquely well-suited for class-action treatment. Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received the illegal telemarketing texts from or on behalf of Defendant.

47. A class action is consistent with both the private right of action afforded by the TCPA and the fairness and efficiency goals of Federal Rule of Civil Procedure 23.

48. The class of persons Plaintiff proposes to represent is tentatively defined as:

> All persons within the United States: (a) Defendant and/or a third party acting on its behalf, made two or more non-emergency telephone solicitation text messages to within a 12-month period; (b) promoting Defendant's products; (c) where the phone numbers Defendant or its agents texted had been listed on the National Do No Call Registry for at least 31 days prior to receipt of the text messages by these persons and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

49. The class defined above is identifiable through phone records and phone number databases.

50. The potential class members number at least in the thousands, since telemarketing campaigns especially if automated make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

51. Plaintiff is a member of the proposed class.

52. There are questions of law and fact common to Plaintiff and to the proposed classmembers, including but not limited to the following: Whether Defendant made, caused or controlled text message mass-marketing to phone numbers listed on the Registry; Whether Plaintiff and the class members are entitled to statutory damages because of Defendant's acts and omissions; Whether Defendant's violations of the TCPA were knowing or willful.

53. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims and the claims of the class members arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

54. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class-members, he will fairly and adequately protect the interests of the class and its members, and he will be represented by counsel skilled and experienced in both class actions and the trial of individual consumer claims.

55. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

56. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

57. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

58. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

59. In accordance with Fed. R. Civ. Pro 38 Plaintiff demands trial of the facts by jury.

WHEREFORE, Plaintiff prays for entry of judgment for - his statutory, actual and/or treble damages sufficient in size to set an example and deter in the future the conduct complained of by Defendant or others. Plaintiff requests the Court certify the class tentatively defined above and award the class statutory damages plus costs of administration. Plaintiff requests an award of his attorney fees and costs. Plaintiff prays for such other and further relief as the court finds proper including injunctive relief.

RESPECTFULLY SUBMITTED,

By: /s/ Sid Childress

Sid Childress, Lawyer
1925 Aspen Dr. #600A
Santa Fe, NM 87505
childresslaw@hotmail.com
(505) 433 - 9823
Attorney for Plaintiff